## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**ROGER HUBBARD,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0799** (BOR Appeal No. 2053242)
              (Claim No. 2017026023)

**SUMMIT ENVIRONMENTAL SERVICES, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Roger Hubbard, by Counsel J. Robert Weaver, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Summit Environmental Services, LLC, by Counsel Kendra Welker and Jeffrey B. Brannon, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on May 9, 2017. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its July 20, 2018, Order. The Order was affirmed by the Board of Review on September 18, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions.

> (c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in

1

the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Hubbard, a water truck driver, alleges that he injured his cervical spine in the course of his employment on April 22, 2017. Mr. Hubbard has a history of cervical spine injuries and degenerative conditions. On August 17, 2016, he sought treatment from Marietta Memorial Hospital Emergency Department. He reported that he was pushed down and landed on pavement at work a few days prior. Mr. Hubbard's girlfriend reported that he had some amnesia. Mr. Hubbard stated that he had neck pain. A CT scan showed no acute cervical fractures but did show severe degenerative spondylosis from C5 to C7. A cervical MRI was performed which revealed moderate stenosis from C5 to C7. Mr. Hubbard denied any preexisting chronic neck pain but did admit to having bilateral paresthesia in the past. Mr. Hubbard was diagnosed with head injury with amnesia, probable loss of consciousness, and cervical spondylosis and stenosis at C5-6 and C6-7.

In an August 31, 2016, treatment note, Abdi Ghodsi, M.D., noted that Mr. Hubbard was being treated for a work-related injury in which he was pushed backwards onto pavement. Mr. Hubbard reported neck pain with radiculopathy following the injury. Dr. Ghodsi diagnosed neck pain, cervical stenosis, radiculopathy, trauma, and an unrelated tremor. It was noted that Mr. Hubbard reported no neck pain on examination that day. Mr. Hubbard was to return in three months to monitor his significant stenosis at two cervical levels.

Following the April 22, 2017, injury at issue, Mr. Hubbard was transported to Camden Clark Medical Center Emergency Department where he was admitted to the hospital for pain management. A treatment note the following day indicates Mr. Hubbard was driving a truck at work the day prior. He hit a bump and struck the top of his head on the roof of the cabin. Mr. Hubbard stated that he developed immediate pain between his shoulder blades and his left leg went numb. He denied any prior chronic neck or back pain. Several CT scans were performed. A chest CT scan showed no acute findings but did note severe degenerative disc changes at L4-5 and L5-S1 with foraminal narrowing and facet arthrosis. A cervical CT scan showed severe degenerative disc changes at C5-6 and C6-7 with joint hypertrophy. An MRI was performed of the cervical spine, and it revealed no acute fractures; a broad based disc spur with herniation at C6-7 causing severe neural foraminal encroachment and moderate spinal canal stenosis; a broad based disc spur at C5-6 causing moderate spinal canal stenosis with flattening of the spinal cord; and mild spurring at C2-3. A lumbar MRI was also performed and showed degenerative changes in the lower two disc levels causing mild narrowing, a tiny protrusion at L5-S1, and neuroforaminal narrowing at

the lower three levels unchanged from a prior study. Mr. Hubbard was examined by James Spychalski, M.D., who opined that he would likely need surgery in the future, but it was not yet indicated. Dr. Spychalski referred Mr. Hubbard to neurosurgery.

The April 23, 2017, Employees' and Physician's Report of Injury indicates Mr. Hubbard injured his head, neck, and back when he struck the ceiling of the truck he was driving. The physician's section was completed by Noah Childers, M.D., who diagnosed cervical spinal stenosis. He did not indicate if the condition was the result of an occupational injury.

In a May 1, 2017, treatment note, Lindsay Parsons, nurse practitioner for Houman Khosrovi, M.D., noted that Mr. Hubbard reported cervical pain, scapular pain, low back pain, pain between the shoulder blades, dizziness, left leg radiculopathy, and left leg numbness. Ms. Parsons diagnosed neck pain, cervical degenerative disc, cervical disc herniation, cervical spinal canal stenosis, cervical foraminal stenosis, cervical spondylitis cord compression, cervical cord myelomalacia, low back pain, lumbar disc disease with radiculopathy, lumbar degenerative disc disease, lumbar foraminal stenosis, and lumbar facet arthritis. Ms. Parsons opined that Mr. Hubbard's symptoms resulted from a very large disc spur complex at C5-6 and C6-7 causing severe canal stenosis. She noted that Mr. Hubbard's pathology and symptoms had worsened since his work injury. Dr. Khosrovi's recommendation was a cervical discectomy and fusion at C5-6 and C6-7. The claims administrator rejected the claim on May 9, 2017. On June 2, 2017, Dr. Khosrovi performed cervical discectomy and fusion for the diagnoses of severe C5-6 and C6-7 spondylotic canal and foraminal stenosis, cervical cord compression, and myelopathy.

Jonathan Luchs, M.D., performed an Age of Injury Analysis on September 7, 2017, in which he concluded that the April 23, 2017, MRI showed chronic degenerative disc disease and arthrosis resulting from central canal stenosis and neural foraminal narrowing. He noted that the MRI showed no abnormal signal evidence to suggest a muscle strain but recommended correlation with his symptoms at the time of his initial evaluation for the allegedly work-related injury.

Mr. Hubbard testified in an October 31, 2017, deposition that on the day of the alleged injury he was driving a water truck. The truck struck a rut in the road causing Mr. Hubbard to bounce up and strike his head on the ceiling of the truck. Mr. Hubbard stated that he was wearing a seat belt at the time. Mr. Hubbard testified that upon exiting the truck a minute later, he felt severe pain between his shoulder blades, and he lost all feeling in both legs. Mr. Hubbard was transported via ambulance to the emergency department. Mr. Hubbard discussed his August 15, 2016, workplace injury in which he was shoved to the ground and struck his head on the pavement. He stated that he had no residuals from the incident. Mr. Hubbard asserted that he had no cervical symptoms before or after that injury. He stated that his cervical spine was not examined in relation to the injury. Mr. Hubbard asserted that he had no cervical symptoms prior to the April 22, 2017, alleged injury.

In a December 12, 2017, report, Kenneth Fortgang, M.D., stated that he compared Mr. Hubbard's August 18, 2016, and August 23, 2017, MRIs. He found that both show essentially the same findings in the form of spondylosis with disc protrusions at C5-6 and C6-7. Dr. Fortgang found no significant changes between the MRIs.

3

The Office of Judges affirmed the claims administrator's rejection of the claim in its July 20, 2018, Order. It found that the evidence clearly shows that Mr. Hubbard had significant pathology in his cervical spine prior to the alleged injury at issue. When Dr. Ghodsi treated Mr. Hubbard on August 17, 2016, he stated that Mr. Hubbard would likely need cervical spine surgery in the future due to significant spondylosis and stenosis at C5-6 and C6-7. The Office of Judges affirmed the rejection of the claim for two reasons. First, the alleged mechanism of injury is not consistent with an injury. Specifically, Mr. Hubbard testified that he struck his head hard on the ceiling of his truck after hitting a bump or a rut in the road. However, the Office of Judges found that Mr. Hubbard testified that he was wearing a seat belt and was only traveling five to seven miles per hour at the time of the alleged injury. The Office of Judges concluded that it was unlikely that he struck his head with force. Second, the Office of Judges found that the physicians' section of the Report of Injury indicates Mr. Hubbard has cervical spinal stenosis; however, Dr. Childers did not indicate if the condition was the result of a work injury. The Office of Judges found that given Mr. Hubbard's preexisting cervical conditions, medical evidence is necessary to establish a compensable cervical injury. *See Stiltner v. West Virginia Off. of Ins. Comm'r and Sara Lee*, No. 10-1564, 2012 WL 3206501 (W.Va. June 18, 2012) (memorandum decision). Mr. Hubbard failed to submit any medical evidence indicating he sustained a compensable injury on April 22, 2017. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on September 18, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). The medical evidence of record clearly shows that Mr. Hubbard had cervical spine degenerative changes prior to the allegedly work-related injury. Further, there is no physician of record who opined that Mr. Hubbard suffered a compensable injury. All of the medical evidence indicates Mr. Hubbard's symptoms resulted from preexisting degenerative changes.

Affirmed.

**ISSUED: March 23, 2022**

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats, sitting by temporary assignment